IN THE UNITED STATES DISTRICT COURT
FOR THE STATE OF OREGON

| | |
|---|---|
| DAMEION DOUGLAS<br>Plaintiff,<br><br>v.<br><br>CHAPLIAN KARUNA THOMPSON et. al.<br>Defendants. | Dist. No. 6:20-cv-00546-AA<br><br>PLAINTIFF'S DECLARATION IN SUPPORT OF BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

I, Dameion Douglas, declare:

1. On the afternoon of Friday October 18th, 2019, there were only three Religious Services that were in the Chapel which were: Friday Sunni Prayer Services; United Pentecostal Service (UPC); and Friday Nation of Islam Prayer Service (NOI).

2. On the afternoon of Friday October 18th, 2019, the United Pentecostal Service was the only Religious Service that had an outside volunteer Chaplain and his name is Doug Lethin. Doug Lethin was the only outside volunteer that was in the Chapel on said date. The UPC Service shared the biggest Chapel room with the NOI Service separated by a thin folding bi folder divider that is not sound proof.

3. Doug Lethin and Toomey Hoover has been coming into OSP as volunteer Chaplains for the UPC Service for several years prior to Friday October 18th, 2019. Doug, Toomey, and AICs' in the UPC service has, for years, always had pleasant brief conversations with myself and AICs' in the NOI Service before our respective services began.

4. Contrary to defendants' declaration and their December 13th, 2019, grievance response of why they cancelled the Friday afternoon October 18th, 2019, Prayer Service is a lie where they allege that an outside volunteer, who was leading the United Pentecostal Service (UPC) next door to the NOI Prayer Service, asked me and another AIC to "please be quiet" in response to me and another AIC being "very loud and using vulgar language" (Exhibit 1). On October 18th, 2019, Thompson did not say anything about any noise before she told me and the other AICs who were in the Service that we had 15 minutes to finish our Prayer Service. To be clear, either on or before October 18th, 2019, no outside volunteer Chaplain, OSP Chaplain, or OSP Correctional Officer has ever asked me nor any AIC attending the NOI Service to "please be quiet." I, nor anyone during any NOI Service has never been loud or used vulgar language during the Friday NOI Prayer Service.

5. Only 18 days elapsed from defendants' December 13th, 2019, grievance response lies that I was using loud and vulgar language causing UPC's outside volunteer Doug Lethin to ask me to be quiet on October 18th, 2019, to their December 31st, 2019, memo informing me that they were canceling the NOI prayer Service for 90 days from January 3rd, 2020, through April 3rd, 2020, (Exhibit 2). When I filed his grievance against them for their 90-day cancellation they expanded

their false narrative to justify their 90-day cancellation in their February 21st, 2020, grievance response where they included the entire NOI Service using loud and vulgar language "from August of 2019 through December 2019" (Exhibit 3): "On December 31st, due to noise issues of disrespectful language at a high volume continuing from August of 2019 through December 2019 the Nation Of Islam group was suspended due to safety and security concerns. Because this was a group issue and not the behavior of a single individual the whole group was suspended." Their forementioned additional excuse is a lie because defendants' would've alleged the entire Prayer Service doing such in their original December 13th, 2019, grievance response instead of waiting for me grievance against them for violating his right to attend his Prayer Service and Pray in Congregation for 90 days.

6.      Doug Lethin or Toomey Hoover were the main outside volunteers coming into OSP to lead the UPC Service for years and neither of them has ever asked me nor any AIC in the NOI Service to "please be quiet." On or about January 22nd, 2020, I wrote the UPC outside volunteer Doug Lethin, who was leading the next door UPC Service on Friday October 18th, 2019, a letter and sent him a copy of defendants' December 13th, 2019, grievance response where they allege that he asked me to "please be quiet" on said date. On January 27th, 2020, Doug Lethin wrote me back and vehemently denies their false allegations that he asked me to please be quiet on October 18th, 2019, and confirms that he's never had a problem with me being loud and/or using vulgar language, or has ever had any problems with the NOI Prayer Service being loud, and that he's never asked me or any AIC in the NOI Service to "please be quiet" (Exhibit 4):

> "First let me say, I couldn't have been written a letter by a nicer person that I have known as a casual acquaintance. I received your letter yesterday. When I saw the letter was from OSP I didn't recognize the name. A picture speaks a thousand words though and I would recognize you anywhere. I will commit your name to memory, certainly your last name shouldn't be too difficult! There is certainly a misunderstanding, and I will do what I am able. If anything, I was concerned that I was the one that was loud. I've always greeted you and those that meet next to our service with the utmost respect and consideration. As we share a room separated by a folding wall, I know our exuberance can be heard as well and I don't want to disrespect your time of meeting. Chaplain Dennis is my direct supervisor over our service time and schedule, and when our Primary volunteer, Toomey Hoover, is not able to make the service, Toomey will ask me to fill in. In reviewing my calendar, I was at OSP on October 18, 2019, and filling in for Toomey Hoover. I haven't ever had to ask you or your group to be quiet, in fact, as stated I make it my duty out of respect to greet and request your consideration if I am getting too loud. I don't recall anything out of the ordinary that day and I certainly didn't have to request you or your group to be quiet. In consideration, there may have been an oversight or a misunderstanding by the Chaplain(s). If someone saw me entering the room, then it was from my typical routine when at OSP to meet and greet the group next door. I do know Chaplains are very supportive of our volunteers and programs. Though our interaction is due to our association with the same service time you always welcomed me and in my intrusion to say hi and greet you and the others. With Great Respect and Prayer for a speedy resolution to the matter at hand."

7.      Defendants' Chaplains Thompson and Stalhnecker's justification for cancelling the October 18th, 2019, Prayer Service is false and was in retaliation against me for exercising his 1st Amendment Rights to file grievances and a lawsuit.

8.      I object to defendants' allegation regarding their cancellation of the October 18th, 2019, Prayer Service that, "there is no evidence in the record-or allegations in my Amended Complaint- that Chaplains Stalhnecker or Thompson were retaliating against me for any protected speech. The grievances cited in my Amended Complaint post-date (and concern) time limitation," (Defs' Sum. Judg. at 7) is false because on page 1, Claim 1, in my Amended Complaint I clearly state: "My 1st Amendment Right not to be retaliated against for filing lawsuits and grievances were violated by Karuna Thompson when she canceled the October 18th, 2019, Friday Obligatory Congregational Nation of Islam (NOI) Jumma Prayer Service. My Right to be free from Retaliation for Exercising my 1st Amendment Rights was clearly established" (Exhibit 5). Likewise, on page 6, Claim 6, I clearly state: "My 1st Amendment Right not to be retaliated against for filing lawsuits and grievances was violated by Dennis Stalhnecker when he canceled the October 18th, 2019, Friday Obligatory Congregational Nation of Islam (NOI) Jumma Prayer Service. My Right to be free from Retaliation for Exercising my 1st Amendment Rights was clearly established. I'm suing Stalhnecker in his individual capacity" (Exhibit 6).

9.      In 2018, I filed an unrelated §1983 against defendant Chaplain Thompson and others in the Oregon District Court titled, Douglas v. Pearlstein et., al. Case No. 6:18-cv-00533-AA (Exhibit 7) and filed several grievances in order to exhaust the available State remedies. On November 3rd, 2016, I filed my first grievance against defendant Thompson (Exhibit 8); on November 29th, 2016, defendant Thompson filed her grievance response to a grievance unrelated to the first grievance (Exhibit 9); on September 28th, 2017, I filed a grievance against Thompson unrelated to her formentioned grievances (Exhibit 10); on April 5th, 2018, I filed a grievance against defendant Stalhnecker (Exhibit 11). I filed several other grievances against Thompson and Stalhnecker as well. Therefore, defendants' arguments, "there is no evidence in the record-or allegations in plaintiff's Amended Complaint-that Chaplains Stalhnecker or Thompson were retaliating against plaintiff for any protected speech," are false as my Amended Complaint verify.

10.     Defendant Thompson orchestrated the false justification to cancel the October 18th 2019, Prayer Service although defendant Stalhnecker wrote their joint December 13th, 2019, grievance response he specifically cites what defendant Thompson told him to justify the cancellation, where he states: "On this occasion, Chaplain Thompson saw what happened…"

11.     I received defendants' above December 13th, 2019, grievance response lies on or about Tuesday December 24th, 2019. Therefore, the next Friday on December 27th, 2019, I brought defendants' December 13th, 2019, grievance response to the Chapel to show the UPC volunteer defendants' lies. Mr. Tommy Hoover was the UPC volunteer that day and as he was being escorted out of the Chapel by two UPC Christian AICs', I respectfully approached them and showed Hoover their December 13th, 2019, lies and he responded with "I've never done that. I was out of town on October 18th, Doug was here on that day." I had every intention to show UPC volunteer Doug Lethin their false allegations that he asked me to "please be quiet" the next Friday, however, I received defendants' December 31st, 2019, memo informing me that they were canceling the NOI prayer Service for 90 days from January 3rd, 2020, through April 3rd, 2020,

(see Exhibit 2), thus, I could no longer go to the chapel from January 3rd, 2020, through April 3rd, 2020, to show Doug defendants' lies.

12. Therefore, I wrote Doug Lethin a letter with their December 13th, 2019, grievance response. On January 27th, 2020, he wrote me back and vehemently denied their false justification to cancel the October 18th, 2019, Prayer Service that I was being so loud that he asked me to "please be quiet" (see Exhibit 4).

13. Therefore, their justification that, "On October 18, 2019, Plaintiff and another AIC were in the room at OSP reserved for their Jumma Prayer. They were the only people in the room and were very loud, to the point that a religious volunteer in the next room door over politely asked them to be quiet. This had happened before" is false and was only a pretext to retaliate against me and cancel the October 18th, 2019, Prayer Service. Therefore, I move this Court to deny defendants' Summary Judgment arguments that they had a lawful justification to cancel the October 18th, 2019, Prayer Service and that it was not cancelled in retaliation for me filing previous grievances and lawsuit.

14. Defendants' Thompson and Stalhnecker's justification for violating and denying my 1st Amendment Right to attend his Prayer Service for 90 days is false and was in retaliation for my previous grievances and § 1983 Federal lawsuit. (Id. 14).

15. In the Ninth Circuit an allegation of "retaliation against a prisoner's First Amendment right to file a prison Grievance is sufficient to support a claim under section 1983." *Bruce v. Ylst, 351 F.3d 1283, 1288 (9th Cir. 2003)*. In the Ninth Circuit a plaintiff must submit "either direct or circumstantial evidence establishing a link between the exercise of Constitutional Rights and the retaliatory action," Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir. 1995), [T]iming can properly be considered as circumstantial evidence of retaliatory intent" Id. 808; See also "[A]llegation[s] of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal," Mihailovici v. Snyder No. 3:15-cv-01675-KI, page 6 (D. Or. 2016).

16. Only 18 days elapsed from defendants' Stalhnecker and Thompson's December 13th, 2019, fabricated false grievance response to my November 18th, 2019, grievance that on October 18th, 2019, I was using loud and vulgar language causing UPC volunteer Doug Lethin to ask him to "please be quiet," which Doug vehemently denies, to their December 31st, 2019, announcement that they were canceling the NOI prayer Service for 90 days. They expanded their original December 13th, 2019, false narrative to include the entire NOI Service having noise issues of disrespectful language, in their February 21st, 2020, grievance response in response to my grievance against them for violating his Right to attend his Prayer Service for 90 days:

> "On December 31st, due to noise issues of disrespectful language at a high volume continuing from August of 2019 through December 2019 the Nation of Islam group was suspended due to safety and security concerns. Because this was a group issue and not the behavior of a single individual the whole group was suspended."

If the above were true Stalhnecker and Thompson would've alleged such in their original December 13th, 2019, response. I, nor anyone during any NOI Service has never been loud or used vulgar language during any Friday NOI Prayer Services. To be clear, neither on, before, or after October 18th, 2019, no outside volunteer Chaplain, OSP Chaplain, or OSP Correctional Officer has ever asked me nor any AIC attending the NOI Service to "please be quiet" (Id. 4). When coupled with the fact that during said time neither the defendants' nor any outside volunteers never did call for the Education/Chapel Correctional Officer Maddax, who was security during said time, to address any safety, security, or noise issues during any NOI Prayer Services proves is a chronology of events that are close in time amounting to circumstantial evidence that their unconstitutional refusal to allow me the right to pray in Congregation during the Friday NOI Jumma Prayer Service for 90 days did not advance any legitimate goals of OSP and was not tailored narrowly enough to achieve any such goals, and, therefore, supports an inference that defendants' lacked a non-retaliatory justification to cancel the Prayer Service for 90 days and their "proffered explanations" that I and the entire NOI Prayer Service were being loud and using disrespectful language are false and pretextual amounting to unconstitutional retaliatory animus in violation of the 1st Amendment. I have proved at least two of the following three ways this Court has said the Ninth Circuit rules allow for a plaintiff to show the requisite causal connection for First Amendment retaliation: (1) the proximity in time between the protected conduct and the retaliatory conduct; (2) expressed opposition by the alleged retaliatory actor; or (3) evidence that the proffered explanations are false and pretextual" Addison v. City of Baker City, 258 F.Supp.3d 1207, 1223 (D. Or. 2017). Defendants' false accusation that I and another AIC was being so loud causing an outside volunteer to ask me to please be quiet coupled with their false accusation that I and the entire Prayer Service was doing the same from August through December in response to my November 3rd 2019, grievance was done in retaliation for filing previous grievances, and a lawsuit, against them see Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir.2004) (a false accusation may constitute retaliation where deprivation of a benefit "was the natural and proximate result of" that accusation and one can infer based on the facts alleged that the accuser "intended that result").


17.    The Establishment Clause, states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The clause "means at least 'that [n]either a state nor the Federal Government ... can pass laws which aid one religion, aid all religions, or prefer one religion over another.' " *Hartmann v. California Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1125 (9th Cir.2013). The Supreme Court has consistently described the Establishment Clause as forbidding not only state action motivated by a desire to advance religion, but also action intended to "disapprove," "inhibit," or evince "hostility" toward religion. See Edwards v. Aguillard, 482 U.S. 578, 585 (1987) ("disapprove"); Lynch v. Donnelly 465 U.S. 668, 673 (1984) ("hostility"); Committee for Pub. Educ. & Religious Liberty v. Nyquist, 413 U.S. 756, 788 (1973) ("inhibi[t]"). Prohibited government action includes that which "foster[s] a pervasive bias or hostility to religion, which could undermine the very neutrality the Establishment Clause requires." Rosenberger v. Rector & Visitors of Univ. of Virginia, 515 U.S. 819, 845-46 (1995). The Supreme Court applies the three part test announced in Lemon v. Kurtzman, 403 U.S 602, (1971), to determine whether government conduct--either through endorsement of religion or hostility towards it--violates the Establishment Clause. Under Lemon, a government act is consistent with the Establishment Clause if it, "(1) has a secular purpose; (2) has a principal or

primary effect of neither advancing or inhibiting religion; and (3) does not foster an excessive entanglement with religion." Id. 612-613. The first step in the Lemon analysis is to discern the governments actual purpose in taking the challenged action. In this case, adopting the policy that I nor any NOI inmates can Congregate and Pray together as God Commands in the Holy Quran Chapter 62 verses 9-10, during the NOI Friday Congregational Jumma Prayer Service for 90 days. The secular purpose required has to be "genuine, not a sham, and not merely secondary to a religious objective" McCreary County v. ACLU, 545 U.S 844, 864 (2005). The 90 day policy cannot pass Lemon's first test because 18 days after Stalhnecker and Thompson's fabricated false justification to cancel the October 18th, 2019, Service in their December 13th, 2019, grievance response on December 31st, 2019, they announced that on Jan 3rd, 2020, they were canceling the NOI Congregational Friday Jumma Prayer Service for 90 days. There is no justification for the 90 day policy that prohibited me, and others, from attending the Mandatory Obligatory Congregational Friday NOI Jumma Prayer Service for 90 days in light of the fact that their December 13th, 2019, justification that I was being loud and using vulgar language causing the next door UPC volunteer Doug Lethin to ask me to be quiet is vehemently denied by Doug Lethin and was used as a pretext and part of their justification for the 90 day cancellation. If the above were true Stalhnecker and Thompson would've alleged such in their December 13th, 2019, response. Furthermore, Education/Chapel Correctional Officer Maddox was security during August through December and routinely did security checks every Friday and never has had to ask me nor anyone in the NOI Service to be quiet and Thompson and/or Stalhnecker never complained to him about the Service being loud and using vulgar language because he would've said something to us. More importantly, why would any Chaplin approve and/or allow any volunteer to act in a Correctional Officers' role by asking any group of prisoners to be quiet especially if the prisoners are not part of their respective service. Not even one of my Chemeketa College professors would tell any prisoner to be quiet because I've personally witnessed my math professor Mr. Sherman go and get the Education/Chapel Officer when he felt a prisoner was being disruptive during math class. Thus, the policy is not "genuine" is a "sham" and clearly has a "religious objective." Therefore, the policy does not have a "secular purpose" and cannot pass the 1st Lemon test, and, therefore, violates the Establishment Clause.

Even if the Court finds that defendants policy is secular and passes the 1st Lemon test, the policy may still violate the Establishment Clause if it violates the 2nd Lemon test if it, "has a principal or primary effect of advancing or inhibiting religion." American Family Ass'n, Inc. v. City and County of San Francisco, 277 F.3d 1114, 1122 (9th Cir. 2002). The 2nd Lemon test applies to, "[O]fficial disapproval or hostility towards religion," Id. 1120-1121. To ascertain effect, the question must be asked whether, "it would be objectively reasonable for the government action to be construed as sending primarily a message of either endorsement or disapproval of religion" Vernon v. City of Los Angeles, 27 F.3d 1385, 1398 (9th Cir. 1994). This inquiry is conducted, "from the perspective of a 'reasonable observer' who is both informed and reasonable," American Family Ass'n, at 1122, and who is "familiar with the history of the government practice at issue." Kreisner v. City of San Diego, 1 F.3d 775, at 784 (9th Cir. 1993). The Ninth Circuit in Brown v. Woodland Joint Unified School Dist., 27 F.3d 1373, 1378 (9th Cir. 1994), held, "[a] government practice has the effect of impermissibly . . . disapproving of religion if it is 'sufficiently likely to be perceived by . . . nonadherents [of the controlling denomination] as a disapproval of their individual religious choices." The 90 day policy that prevented me, and others, from attending weekly NOI Congregational Jumma Prayer Services is a blanket statement that Stalhnecker and Thompson has an open "disapproval or hostility" towards the Nation of Islam Prayer Service

especially in light of the fact that their justification is rooted, at least in part, on the fabricated false narrative that I was being loud and using vulgar language before and during Jumma Prayer Service causing UPC volunteer Doug to ask me to be quiet on October 18th, 2019, which he vehemently denies, and they continued using the same false narrative and even expanded it to include the entire NOI Service using disrespectful language from August through December to justify canceling the Prayer Service for 90 days. In fact, if the formentioned were true why would defendants Thompson and Stalhnecker intentionally make up the fabricated false narrative and lie on UPC volunteer Doug Lethin in their December 13th, 2019, grievance response that he asked me to be quiet on October 18th, 2019, when in fact, as previously mentioned, according to his January 27th, 2020, letter he has never had to ask me nor anyone else in the NOI Prayer Service to be quiet and has never had any problems with me or the NOI Jumma Prayer Service and Doug has first hand knowledge because, during said time, the NOI Service shared a thin folding wall with the UPC Religious Service on Friday afternoons and is much closer to either Thompson's or Stalhnecker's offices. Therefore, based on Thompson and Stalhnecker's continual reliance on their December 13th, 2019, false statements, combined with their alleging that the entire Service was doing the same from Aug.- Dec. to justify canceling the NOI Prayer Service for 90 days is evidence that the policy was an official Hostile act motivated by a desire to Inhibit and Prevent me, and others, from attending the NOI Prayer Service for 90 days which amounts to official Disapproval and Hostility, and, cannot pass Lemon's second test, and, therefore, violates the Establishment Clause.

In evaluating Lemon's 3rd test Court's must consider whether government action, "foster[s] excessive governmental entanglement with religion." Vasquez v. L.A City, 487 F.3d 1246, 1255 (9th Cir. 2007). There are two types of entanglement: administrative and political entanglement. "Administrative entanglement typically involves comprehensive, discriminating, and continuing state surveillance of religion" Vernon v. City of Los Angeles, 27 F.3d 1385, 1399 (9th Cir. 1994). Based on the fact that Stalhnecker and Thompson kept expanding their justifications for canceling the Prayer Service for 90 days and is rooted, at least in part, from their flat out lie that I was being loud and using vulgar language while entering and during the Friday Prayer Service on October 18th, 2019, causing UPC volunteer Doug Lethin to ask me to be quiet (see Exhibit 7), which he vehemently denies and they continued using the same fabricated false narrative and continued expanding the justification to include the entire NOI Service continuously doing the same from August through December is Direct Evidence that Stalhnecker and Thompson's justifications are fabrications and amounts to "comprehensive," "discriminatory," and "continuing state surveillance of religion" amounting to "excessive governmental entanglement with religion" and cannot pass the 3rd Lemon test, and, therefore, violates the Establishment Clause. Defendants' Thompson and Stalhnecker's refusal to allow me the right to attend my Prayer Service for 90 days violated my Establishment Clause Rights because their lies to justify their cancellation clearly demonstrates hostility, bias, and disapproval of my Religion.

18.   Defendants' conduct in blocking my right to attend the NOI Jumma Prayer Service for 90 days when they canceled it from January 3rd, 2020, through April 3rd, 2020, violated the 1st Amendment Free Exercise four-factor "reasonableness" test the U.S Supreme Court announced in Turner v. Safley, 482 U.S. 78, 89-90, (1987). The First Turner factor requires "a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it" Id. 89. The prison regulation says in relevant part: **"291-143-0130 Restriction of**

**Religious Activity/Items**An inmate's participation in approved religious activities and possession of approved religious items may be restricted by the Department of Corrections when deemed necessary to maintain facility security, safety, health and order, or to further inmate rehabilitation or other penological interest, consistent with applicable legal standards." There's not any "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify" the 90 day cancellation of the Congregational NOI Jumma Prayer Service from January 3rd, 2020, through April 3rd, 2020, because Thompson and Stalhnecker relied, at least in part, on the same fabricated false narrative in their December 13th, 2019, grievance response that I was using loud and vulgar language during the October 18th, 2019, Prayer Service causing the UPC Service volunteer Doug Lethin to ask me to "please be quiet" (see Exhibit 7), which he vehemently denies (see Exhibit 9), as a pretext to justify canceling the NOI Prayer Service for 90 days because the 90 day cancellation was announced 18 days after their December 13th, 2019, false narrative in their December 31st, 2019, cancellation memo where they expanded their false narrative to include the entire NOI Prayer Service: "Due to continuous issues regarding disrespectful language and behaviors in this group it will be suspended for 90 days." They further expanded their false narrative to include the entire Service using disrespectful language for 120 days in their February 21st, 2020, grievance response:"Due to noise issues of disrespectful language at a high volume continuing from August of 2019 through December 2019 the Nation Of Islam group was suspended due to safety and security concerns. Because this was a group issue and not the behavior of a single individual the whole group was suspended." Clearly, Thompson's and Stalhnecker's credibility is damaged and their state of mind exposed by their December 13th, 2019, false evidence that UPC volunteer Doug Lethin asked me to be quiet because I was being loud and using vulgar language, which he vehemently and their lies kept expanding to include the entire Service doing the same in their December 31st, 2019, memo) and that it continued for 120 days from August through December in their February 21st, 2020, grievance response. The fabricated version of events surrounding the fabricated false narratives is overwhelming evidence that Thompson and Stalhnecker used their false narratives as a pretext and justification to cancel the NOI Prayer Service for 90 days. Please note, that during said times the following three Religious Services were the only Services in the Chapel on Friday afternoons: United Pentecostal Church (UPC), Sunni Islam, and Nation of Islam (NOI) and the UPC Service was the only Friday afternoon Service with any volunteers. Therefore, there's no doubt that when Thompson and Stalhnecker referenced "volunteers" they were referring to UPC volunteer Doug Lethin. Based on the formentioned, there did not exist any, "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify" canceling the Obligatory Congregational Friday NOI Jumma Prayer Service for 90 days.

I object to defendants' arguments on page 10 where they assert: "here temporary limits on the group NOI Prayer Services at OSP were rationally connected to OSP's legitimate interests in ensuring that other groups in the chapel area could conduct services without undue disruption and to make the space safer. As earlier stated, excess noise in the chapel area is a cause for concern because it could drown out calls for help, and that problem is exacerbated by the frequent presence of outside volunteers in the space." Defendants argue that excess noise in the Chapel area is reasonable related penological interest is false because if that were the case then whenever any Religious Service is singing loudly in the chapel would be a security issue and cause for concern. The formentioned is false because if that were the case then the Seventh Day

Adventist Service (SDA), that I occasionally attend, and the Thursday Night Gospel Service would've been cancelled because during the respective Services they routinely sing loud and in the case of the Gospel Service it would've been cancelled because they sing every Thursday night for most of the night because while I was attending Thursday Chemeketa College Classes or Computer Lab I can clearly hear them singing. Therefore, defendants' cannot satisfy the reasonableness standard of the 1st Turner factor, and, therefore, violated the Free Exercise Clause.

The Second Turner factor considers "whether there are alternative means of exercising the right that remain open to prison inmates" Id. 90. There is no other alternative for Muslim inmates to observe and practice the Obligatory Congregational Friday Jumma Prayer Service from January 3rd, 2010, through April 3rd, 2020, other than to have allowed me, and others, to follow God's Commandment in the Holy Quran 62: 9-10 and attend Friday Jumma Congregational Prayer Service and pray with other Muslims because I, nor any Muslim, can perform Friday Jumma Congregational Prayers alone because God Commands that it has to be performed in Congregation. I oppose defendants' argument on page 10, that, "plaintiff was not denied all means of religious expression on either October 18, 2019, or during the temporary suspension of in-person services in early 2020. Plaintiff had Access to the written Khutba and could exercise his faith in his cell. He was also provided an opportunity to shower at mid-day before saying his prayers. The only suspension was the temporary suspension of the group services that had been causing a disturbance." I oppose defendants' above Alternative means arguments because defendants' allegations that I had access to written materials and ability to pray alone in his cell is a sufficient alternative to group prayer, is exactly what the Ninth Circuit rejected in Ward v. Walsh, 1 F.3d 873, (9th Cir 1993), where the Court found, "the opportunity to engage in private prayer" was not enough to satisfy the second Turner factor because if it were, "the factor would have no meaning at all." Id. 878.

The Third Turner factor considers "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally" Id. 90. There would be no impact on guards and other inmates or on allocation of prison resources to have allowed me, and the NOI community, to attend the Friday NOI Congregational Prayer Service during the 90-day cancellation.

The Fourth Turner factor considers whether the regulation is an "exaggerated response" to the prison's concerns and the prisoner must show availability of "obvious, easy alternatives," because "if an inmate claimant can point to an alternative that fully accommodates the prisoner's rights at de minimis cost to valid penological interests, a court may consider that as evidence that the regulation does not satisfy the reasonable relationship standard" Id. 90-91. The easy alternative would've been to allow me, and the entire NOI community, to attend the NOI Prayer Service because there's no other way to have fully accommodated my right as a Muslim to follow God's Commandment in the Holy Quran Chapter 62 verses 9-10, to attend the Friday Congregational Prayer Service and perform the Congregational Prayer because I cannot perform the Congregational prayer alone as it has to be performed in a Congregation. Furthermore, Stalhnecker and Thompson's justification for the cancellation was a series of false narratives that began with their December 13th, 2019, grievance that UPC volunteer Doug Lethin asked me to be quiet because I was being loud and using vulgar language during the NOI Prayer Service on October 18th, 2019, which he vehemently denies, and on December 31st, 2019, they expanded it

to include the entire Service and on February 21st, 2020, further expanded it to include the entire NOI Prayer Service being loud and using vulgar language from August through. If their narratives were true why didn't they say the entire service was doing such from August through December in their first December 13th, 2019, grievance response. Their failure to allege such at the earliest opportunity combined with the fact that they intentionally lied on UPC volunteer Doug Lethin that he asked me to be quiet and continued using such as part of their justification to cancel the NOI Service for 90 days is evidence that the 90 day cancellation was an "exaggerated response" to a problem that was "fabricated" and did not exist. Given my sincerely held belief that I'm required to abide by God's Commandment and attend Friday Jumma Prayer Service and perform the Congregational Prayer to maintain my spirituality, satisfies, as a threshold matter, that their using fabricated false narratives to cancel the Service for 90 days violates the Free Exercise Clause of the 1st Amendment.

19. Stalnecker and Thompson intentionally violated my Equal Protection Rights when they knowingly treated me, and others, differently than others practicing other faiths when they canceled the NOI Jumma Prayer Service for 90 days using the same December 13th, 2019, fabricated false narrative that UPC volunteer Doug Lethin had to ask me to be quiet because I and another inmate were using loud and vulgar language on Friday October 18th, 2019, which he denies and expanded their false narrative to include the entire NOI Service being loud and using vulgar language in their December 31st, 2019, memo and further expanded it to include the entire NOI Service continuously doing the same from August through December as a justification for the 90 day cancellation. More importantly, other faiths including the Friday Sunni Muslim Prayer Service and Saturday Jewish Prayer Service were allowed to continue having their Services without a volunteer and without any interference from any OSP Chaplain during said time. This Court in Am. Humanist Ass'n. v. United States, 63 F.Supp.3d 1274 (D. Or. 2014), held:

> "Allowing followers of other faiths to join religious group meetings while denying [plaintiff] the same privilege is discrimination on the basis of religion. Therefore, the court finds that plaintiffs have alleged sufficient facts to state an equal protection claim for relief that is plausible on its face." Id. 1284

20. Schow admitted to throwing away a bag of my property without leaving any evidence that he was even in my cell (Doc. 75 at 13), thus, violating Correctional Officers rules of leaving a confiscation form and a cell sanitation form so that the inmate may have due process or some way to challeng the confiscation and/or destruction of their property. Schow's confession "is probably the most probative and damaging evidence that can be admitted against him" Arizona v. Fulminante, 499 U.S. 279, 296 (1991). If this Court decline to exercise supplemental jurisdiction over the state-law claims, plaintiff moves this Court to remand the stale law claim to the state court.

21. Thompson failed to add my name to the Ramadan list because I did not receive a morning Ramadan sack lunch on the first day of Ramadan. If she had done so, plaintiff would've received a morning Ramadan sack.

"I HEREBY DECLARE THAT THE ABOVE STATEMENT IS TRUE TO THE BEST OF MY KNOWLEDGE AND BELIEF, AND THAT I UNDERSTAND IT IS MADE FOR USE AS EVIDENCE IN COURT AND IS SUBJECT TO PENALTY FOR PERJURY."

Declaration of Service

I, Dameion Douglas, do declare:

On Today's date of January 5th, 2024, sent True copies of my; "Motion for Extension of Time and Brief in Opposition To Defendants' Motion for Summary Judgment" to the following Party;

Attorney
Shannon Vincent
1162 Court St. NE
Salem, OR 97301

"I swear under the penalty of perjury that the above is True and Correct"

1/05/24

Oregon Department of Corrections - AIC Mail

Institution: OSP
Name: Dameion Douglas SID 10131429
Address: 2605 State St.
City: Salem, Oregon ZIP 97301

quadient        FIRST-CLASS MAIL
01/10/2024
US POSTAGE $002.31

ZIP 97310
041M11470048

Legal Mail
Clerk
U.S District Court
405 E. 8th Ave,
Eugene, OR 97401

Postage Paid