IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

|  |  |
|---|---|
| **DAMEION DOUGLAS**, | Case No. 6:20-cv-00546-IM |
| Plaintiff, | **OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT** |
| v. | |
| **CHAPLAIN DENNIS STAHLNECKER**; **CHAPLAIN KARUNA THOMPSON**; and **CHARLES SCHOW**, | |
| Defendants. | |

Dameion Douglas, SID #10131429, Oregon State Penitentiary, 2605 State Street, Salem, OR 97310. Pro Se.

Ellen F. Rosenblum, Attorney General, and Shannon M. Vincent, Senior Assistant Attorney General, Oregon Department of Justice, Trial Division, CLS, 1162 Court Street NE, Salem, OR 97301. Attorneys for Defendants.

**IMMERGUT, District Judge.**

Before this Court are the parties' cross-motions for summary judgment. Defendants'

Motion for Summary Judgment ("Defs.' MSJ"), ECF 99; Plaintiff's Motion for Summary

Judgment ("Pl.'s MSJ"), ECF 125. Plaintiff, an adult in custody ("AIC") housed at the Oregon

PAGE 1 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

State Penitentiary ("OSP"), is Muslim and a member of the Nation of Islam ("NOI"). Plaintiff claims that Chaplains Karuna Thompson and Dennis Stahlnecker violated his rights to religious freedom and equal protection by (1) ending the Friday Jumma Prayer Service early on October 18, 2019; and (2) suspending Friday Jumma Prayer Services for 90 days from January 3, 2020 to April 3, 2020. Verified Amended Complaint ("Am. Compl."), ECF 75 at 5–11. Plaintiff also alleges that Defendant Thompson violated his rights to religious freedom by failing to add him to the Ramadan list in May 2019. *Id.* at 11–12. Plaintiff alleges that Officer Charles Schow denied him access to the courts and improperly confiscated his personal property. *Id.* at 12. Finally, Plaintiff alleges that Defendants took these actions in retaliation for Plaintiff's grievances and lawsuits. *Id.* at 6, 10, 13. Plaintiff brings his claims under 42 U.S.C. § 1983 and the Constitution, the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and state law. Plaintiff seeks declaratory and injunctive relief, as well as damages. *Id.* at 14–15.

As explained below, Defendants are entitled to summary judgment on Plaintiff's Establishment Clause, Equal Protection Clause, and RLUIPA claims against Defendants Thompson and Stahlnecker; Plaintiff's free exercise and retaliation claims against Defendants Thompson and Stahlnecker relating to the early termination of the October 18 service; Plaintiff's claims for injunctive and declaratory relief; Plaintiff's claims against Defendant Thompson for the failure to include him on the May 2019 Ramadan list; and Plaintiff's claims against Defendant Schow for the May 2019 cell search. Defendants are not entitled to summary judgment on Plaintiff's retaliation and free exercise claims against Defendants Thompson and Stahlnecker for the 90-day suspension of the Jumma Prayer Services. Plaintiff is not entitled to summary judgment on any of his claims.

**LEGAL STANDARDS**

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is satisfied, the burden shifts to the non-moving party to set out specific facts showing a genuine issue for trial.

To defeat summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. The record is reviewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654 (1962).

When considering a motion for summary judgment, a court may neither weigh the evidence nor assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A "material fact" is determined by the substantive law regarding the legal elements of a claim. *Id.* at 248. If a fact will affect the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth, then it is material. *S.E.C. v. Seaboard Corp.*, 677 F.2d 1301, 1305–06 (9th Cir. 1982). A dispute about a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248.

When, as here, the parties file cross-motions for summary judgment, the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a

judgment may be entered in accordance with the Rule 56 standard. *See Fair Hous. Council of Riverside Cnty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001) ("[W]hen parties submit cross-motions for summary judgment, '[e]ach motion must be considered on its own merits.'" (citation omitted)).

## BACKGROUND

### A.  May 2019 Ramadan List

Plaintiff alleges that Defendant Thompson "failed to add [his] name to the Ramadan list" in May 2019, which caused him to miss the first day of Ramadan. Am. Compl., ECF 75 at 11–12.

According to Defendants, Defendant Thompson added Plaintiff's name and the names of all other NOI members at OSP to the Ramadan list before the start of Ramadan. *See* Declaration of Chaplain Dennis Stahlnecker ("Stahlnecker Decl."), ECF 101, Ex. 5.

### B.  May 2019 Cell Search

Plaintiff alleges that on May 27, 2019 Defendant Schow "came into [Plaintiff's] cell and removed/confiscated legal work including the following: approx. 300 pages of transcripts and 2 legal disc[s] containing needed transcripts, audio recordings, and exhibits needed for ongoing Federal Court cases including my current 42 U.S.C[.] § 1983 lawsuit against several OSP and ODOC employees. Officer Schow confiscated/destroyed the [aforementioned] without leaving a confiscation or cell sanitation form and admitted to doing it when he apologized which has interfered with my criminal and civil cases." Am. Compl., ECF 75 at 12–13.

According to Defendant Schow, he was assigned to perform random cell searches on May 27, and while searching Plaintiff's cell he removed what looked like a bag of trash. Declaration of Charles Schow ("Schow Decl."), ECF 100 ¶¶ 6–7. Defendant Schow asserts that

PAGE 4 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

he was unaware of Plaintiff's grievances and ongoing litigation against other ODOC staff. *Id.*
¶¶ 9–10.

## C.  October 18, 2019 NOI Jumma Prayer Service

On October 18, 2019, at around 1:25 p.m., Plaintiff went to the OSP Chapel room used
for the NOI Jumma Prayer Service. Am. Compl., ECF 75 at 1 ¶ 1; *see* Stahlnecker Decl., ECF
101 ¶ 6.

According to Plaintiff, he arrived alone and joined three AICs who were already in the
room. Am. Compl., ECF 75 at 1 ¶ 1. Defendant Thompson told the men they had only fifteen
minutes to perform their prayer. *Id.* Plaintiff's fellow AICs left because that was not enough time
to read the sermon and pray, but Plaintiff chose to stay in the room and was eventually joined by
another AIC to go over the sermon. *Id.* At around 1:55 p.m., Defendant Stahlnecker ordered
Plaintiff to leave the Chapel. *Id.* Plaintiff claims that the Congregational Sunni Jumma Prayer
Service was being held in the Chapel library and that they were not asked to leave the Chapel. *Id.*

According to Defendants, Plaintiff and one other AIC were in the room reserved for their
Jumma Prayer, and they "were very loud, to the point that a religious services volunteer in the
next room over politely asked them to be quiet." Stahlnecker Decl., ECF 101 ¶¶ 6–7.[1] Defendant

---

[1] Plaintiff contests whether the volunteer reported his group. Am. Compl., ECF 75 at 3
¶ 4. He claims that he sent that volunteer a letter, and that volunteer responded that he was at the
Chapel on October 18 and did not recall Plaintiff's group being disruptive. *Id.* at 4 ¶ 6; *see also*
ECF 131-1 at 4. "A trial court can only consider admissible evidence in ruling on a motion for
summary judgment." *Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002) (citations
omitted). The Ninth Circuit has repeatedly held that "unauthenticated documents cannot be
considered in a motion for summary judgment." *Id.* To be admissible, a document must be
authentic, meaning there must be "evidence sufficient to support a finding that the item is what
the proponent claims it is." Fed. R. Evid. 901(a). There is insufficient evidence to support a
finding that the letter provided by Plaintiff is from the volunteer as Plaintiff claims. This Court
will not consider this letter for purposes of resolving the instant motions.

Thompson warned Plaintiff about the noise and advised that he had fifteen minutes to complete their Prayer Service. *Id.* ¶ 8. After more than fifteen minutes, Defendant Stahlnecker told Plaintiff the Jumma Prayer Service time was over. *Id.*

Plaintiff filed a grievance regarding the October 18 incident. Am. Compl., ECF 75 at 2 ¶ 2. In his grievance, he stated that Defendant Thompson was retaliating against him because he had sued her. *Id.* In December 2019, Plaintiff received a grievance response from Defendant Stahlnecker, which found that "[Plaintiff] and the other AIC were being very loud and using vulgar language," which caused a volunteer in the Chapel to ask them to be quiet. *Id.* at 2 ¶ 3. The response also states that "this has happened many times in the past on numerous occasions" and Plaintiff has been "warned about extreme noise." *Id.*

## D.  Suspension of Jumma Prayer Services

In December 2019, Plaintiff learned that the group NOI Jumma Prayer Services were suspended for 90 days, from January 3, 2020 to April 3, 2020. Am. Compl., ECF 75 at 8. Defendants claim that Oregon Department of Corrections ("ODOC") Religious Services decided to suspend the group services due to continued noise issues and coarse language during the group's services. Stahlnecker Decl., ECF 101 ¶ 13. According to Defendants, the suspension only applied to the group service that was causing a disturbance—impacted AICs could still pray and practice their religion independently.

The 90-day suspension was cut short because of Covid-19 pandemic-related closures; all group religious services were cancelled at OSP in March 2020 to contain the spread of the virus. *Id.* ¶ 19.

## DISCUSSION

### A.  Injunctive and Declaratory Relief

As an initial matter, Defendants argue that Plaintiff lacks standing for the injunctive and declaratory relief he seeks. This Court agrees. Plaintiff asks this Court to order Defendants to "[i]mmediately make available the NOI's Religious Storage Closet during the Friday NOI Prayer Services." Am. Compl., ECF 75 at 14. This relief is unrelated to the injuries Plaintiff alleges he suffered, and so he has no standing to pursue it in this action. In addition, "[w]here a plaintiff seeks damages or relief for an alleged constitutional injury that has already occurred declaratory relief generally is inappropriate." *Hunter v. Daryl F. Gates*, No. CV99–12811, 2001 WL 837697, at *4 (C.D. Cal. Apr. 16, 2001) (citations omitted), *aff'd sub nom. Hunter v. Gates*, 68 F. App'x 69 (9th Cir. 2003); *see also Santillan v. City of Reedley*, No. CIV F 07-391 AWI SMS, 2007 WL 1847661, at *6 (E.D. Cal. June 27, 2007) ("Plaintiffs appear to be requesting a declaration that involves only past conduct, where the harm has already occurred, and where there appears to be no continuing adverse effects. Under these circumstances, [Plaintiff] has standing to sue for damages under 42 U.S.C. § 1983, but has no standing to sue for declaratory relief that his constitutional rights were violated." (citations omitted)).

Defendants are entitled to summary judgment on Plaintiff's claims for injunctive and declaratory relief.

### B.  Retaliation

"It is well-established that . . . prisoners have a First Amendment right to file prison grievances." *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (first citing *Rhodes v. Robinson*, 408 F.3d 559, 566 (9th Cir. 2005); and then citing *Bruce v. Ylst*, 351 F.3d 1283, 1288 (9th Cir. 2003)). "Retaliation against prisoners for their exercise of this right is itself a

constitutional violation, and prohibited as a matter of 'clearly established law.'' *Id.* (citations omitted).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes*, 408 F.3d at 567–68 (footnote and citations omitted).

### 1. May 2019 Ramadan List

Defendants are entitled to summary judgment on Plaintiff's retaliation claim against Defendant Thompson for failure to add his name to the Ramadan list. Defendants have produced evidence establishing that Defendant Thompson added Plaintiff's name to the Ramadan list. *See* Stahlnecker Decl., ECF 101, Ex. 5 at 8, 13. While this Court accepts that Plaintiff missed the first day of Ramadan, Plaintiff has not presented evidence to create a triable issue of fact as to whether Defendant Thompson added his name to the list.

### 2. May 2019 Cell Search

Defendants are entitled to summary judgment on Plaintiff's retaliation claim against Defendant Schow. Plaintiff fails to introduce evidence to create a triable issue of fact as to whether Defendant Schow conducted the May 2019 cell search out of a retaliatory motive. In particular, Plaintiff presents no evidence plausibly suggesting that Defendant Schow knew of Plaintiff's grievances and lawsuits against other ODOC staff, nor that Defendant Schow took adverse action against Plaintiff because of those grievances and lawsuits. The mere fact that the alleged adverse action took place after Plaintiff filed prison grievances cannot establish that the exercise of Plaintiff's First Amendment rights was the legal and proximate cause of the

retaliation. *Pratt v. Rowland*, 65 F.3d 802, 807–08 (9th Cir. 1995) (explaining that the timing of adverse actions alone is insufficient to establish retaliatory intent).

### 3. Early Ending for October 18 Service

Defendants are entitled to summary judgment on Plaintiff's retaliation claim against Defendants Thompson and Stahlnecker for ending the Jumma Prayer Service on October 18. The action Plaintiff alleges these Defendants took is not an adverse action sufficient to establish the first element of retaliation. An adverse action is action that "would chill a person of ordinary firmness" from engaging in that activity. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). In the prison context, the action taken must be clearly adverse to the plaintiff. *See, e.g.*, *Rhodes*, 408 F.3d at 568 (noting that arbitrary confiscation and destruction of property, initiation of a prison transfer, and assault in retaliation for filing grievances was sufficient to plead an adverse action); *Pratt*, 65 F.3d at 806–07 (reaffirming that an allegation of retaliatory prison transfer and double-cell status sufficiently states a claim of retaliation). According to Plaintiff's version of events, he and his fellow worshipers were given a fifteen-minute warning and then permitted to stay in the Chapel for another fifteen minutes. Plaintiff cannot show that some limitation of prayer time—in this case to approximately 30 minutes—is an adverse action that would "chill a person of ordinary firmness" from filing grievances.

### 4. Suspension of Services

Neither side is entitled to summary judgment on Plaintiff's retaliation claim against Defendants Thompson and Stahlnecker for the 90-day suspension of Jumma Prayer Services. There are genuine issues of material fact as to the motivation for the suspension.

Defendants assert that the suspension was due to "recurring noise issues that posed a threat to orderly operations and prison security." Defs.' MSJ, ECF 99 at 7. To support this

assertion, Defendants provide the declaration of Defendant Stahlnecker, but Defendants do not provide extrinsic evidence contemporaneous to the relevant period, August to December 2019. For instance, there is no evidence that warnings were given or that efforts were made to warn the group of the consequences of continuing in a particular manner. Moreover, while some responses to Plaintiff's grievances suggest that there were reports or complaints made against the NOI group about the conduct of its members, *see* Stahlnecker Decl., ECF 101, Ex. 1 at 11, Defendants provide no details or specificity as to the extent or frequency of the alleged disruptions.[2]

For his part, Plaintiff insists that "no outside volunteer Chaplain, OSP Chaplain, or OSP Correctional Officer has ever asked me nor any AIC attending the NOI Service to 'please be quiet' "on, before, or after October 18, 2019." Declaration of Dameion Douglas, ECF 131 ¶ 16. And Plaintiff points out that he filed grievances relating to the October 18 incident soon after it occurred, and the 90-day suspension of the Prayer Services was close in time to those grievances which could support an inference of retaliatory motive.

On this record, this Court is left with Plaintiff's statements versus statements by Defendants Stahlnecker and Thompson. Defendants have offered no additional evidence to demonstrate as a matter of law that Plaintiff's retaliation claim is implausible. Based on the evidence the parties have provided, there are genuine issues of fact as to what happened prior to the 90-day suspension and what motivated that suspension. Deciding which version of events is accurate will require weighing the evidence and making credibility determinations, which are

---

[2] This is not to say that in all circumstances there is a requirement to document a certain number of complaints or warn an AIC or a group of AICs before imposing a sanction, nor that such evidence is necessary to defeat a retaliation claim on summary judgment. Rather, these are examples of evidence that could, depending on the facts of a particular case, allow this Court to determine that a plaintiff's retaliation claim is implausible as a matter of law.

tasks for a jury. Defendants may very well prevail on this claim at trial, but at this stage Defendants have not presented evidence showing Plaintiff's version of events is implausible.

## C. Free Exercise

Prisoners retain their First Amendment rights to free exercise of religion while incarcerated. *O'Lone v. Est. of Shabazz*, 482 U.S. 342, 348 (1987), *superseded on other grounds by* Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb to 2000bb-4, *as stated in Ashelman v. Wawrzaszek*, 111 F.3d 674, 676–77 (9th Cir. 1997). When a prison regulation or official acts impinge on an AIC's constitutional right to free exercise, the regulation or acts are valid if they are reasonably related to legitimate penological interests. *Turner v. Safley*, 482 U.S. 78, 89 (1987); *see also Shakur v. Schriro*, 514 F.3d 878, 884 (9th Cir. 2008).[3]

Both parties recognize that such a determination is made through the test outlined in *Turner v. Safley*, 482 U.S. 78 (1987), which requires this Court to balance four factors in determining whether the challenged conduct is reasonably related to legitimate penological interests: (1) whether there is a valid rational connection between the challenged conduct and the legitimate government interest put forward to justify it; (2) whether there are alternative means of exercising the right that remain open to prison inmates; (3) whether accommodation of the asserted constitutional right will impact guards and other inmates or prison resources generally; and (4) whether there is an absence of ready alternatives versus the existence of obvious, easy alternatives. *Shakur*, 514 F.3d at 884 (citing *Turner*, 482 U.S. at 89–90). "The first *Turner* factor is the most important." *Jones v. Slade*, 23 F.4th 1124, 1135 (9th Cir. 2022). In conducting this

---

[3] To warrant protection under the First Amendment, the religious belief must be "sincerely held" and "rooted in religious belief," rather than in secular philosophical concerns. *Malik v. Brown*, 16 F.3d 330, 333 (9th Cir. 1994) (citations omitted). That aspect of this case is not in dispute.

analysis, courts are to give significant deference to the views of prison officials given the "inordinately difficult" nature of prison operation. *Turner*, 482 U.S. at 84–85.

### 1. May 2019 Ramadan List

Defendants are entitled to summary judgment on Plaintiff's free exercise claim for Defendant Thompson's alleged failure to add his name to the May 2019 Ramadan list. As noted above, Defendants have produced evidence showing that Defendant Thompson added Plaintiff's name to the list. While this Court accepts that Plaintiff missed the first day of Ramadan, there is no genuine dispute over whether Defendant Thompson added his name to the list.

### 2. Early Ending for October 18 Service

Defendants are entitled to summary judgment on Plaintiff's free exercise claim for the early ending of the Jumma Prayer Service on October 18. Plaintiff has not established that his right to free exercise was impinged by being required to leave the Chapel early. According to Plaintiff's version of events, he had the opportunity to participate in the Jumma Prayer Service for half an hour. While fifteen minutes may not be enough time to complete the Service, *see* Am. Compl., ECF 75 at 1 ¶ 1, Plaintiff was ultimately allotted thirty minutes. Further, Plaintiff does not specify how much additional  time he expected to have in the Chapel, nor how much time his group has been allotted in the past.

### 3. Suspension of Services

Neither side is entitled to summary judgment on Plaintiff's free exercise claim relating to the 90-day suspension of the Jumma Prayer Services. As explained for the retaliation claim relating to the 90-day suspension, there are issues of fact that preclude summary judgment.

In particular, there are issues of fact as to why the Defendants suspended the Jumma Prayer Services. Defendants claim the group had a history of being vulgar and disruptive, which

is supported by Defendant Stahlnecker's declaration. Defendants do not provide further evidence establishing that the group had been complained of or disciplined for this alleged behavior. Plaintiff claims there is no such history, which is supported by his Verified Complaint and declaration. *See Keenan v. Hall*, 83 F.3d 1083, 1090 n.1 (9th Cir. 1996) ("A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is 'based on personal knowledge' and 'sets forth specific facts admissible in evidence.'" (citation omitted)). Plaintiff asserts that the Defendants suspended the service in order to retaliate against him for filing grievances. This Court cannot decide which version is accurate without weighing the evidence and making credibility determinations, which is not permitted on summary judgment.

Because there are questions of fact going to the events leading up to the suspension and the reason for the suspension, this Court cannot weigh the first—and most important—*Turner* factor. Under Defendants' version of events, the legitimate penological interest was controlling noise levels and providing a disruption-free Chapel. Suspending the disruptive group would have a valid, rational connection to that goal. Under Plaintiff's version, there is no legitimate penological purpose because the Defendants' actions were retaliatory and were not based on noise and disruption. Accordingly, this factor favors neither party.

Second, Plaintiff did appear to have alternative means available to practice his religion other than through the Jumma Prayer Services. Defendants claim that he had "access to the written Khutba (the sermon for the Friday Prayer) and could exercise his faith in his cell." Defs.' MSJ, ECF 99 at 10. Plaintiff does not contest that he had the ability to practice his religion individually. This factor weighs in favor of Defendants.

As for the third and fourth *Turner* factors, the issues of fact as to the underlying events prevent this Court from evaluating these factors. If Defendants' version of events is accurate,

then this Court would weigh the impact of accommodating a disruptive group in the Chapel and any alternatives to excluding a disruptive group. On the other hand, if Plaintiff's version of events is accurate, then this Court would weigh the impact of requiring Chaplains not to retaliate and alternatives to excluding an AIC as a means of retaliation. At this stage, these factors favor neither side.

Because there are preliminary questions of fact as to the events predating the suspension and the motivation for the suspension, neither side is entitled to summary judgment on this claim.

## D. Establishment Clause

The First Amendment's Establishment Clause, applicable to state action by incorporation through the Fourteenth Amendment, states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I; *see Everson v. Bd. of Educ. of Ewing Twp.*, 330 U.S. 1, 8 (1947). "This clause applies not only to official condonement of a particular religion or religious belief, but also to official disapproval or hostility towards religion." *Am. Fam. Ass'n, Inc. v. City & County of San Francisco*, 277 F.3d 1114, 1120–21 (9th Cir. 2002); *see also Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 532 (1993) ("In our Establishment Clause cases we have often stated the principle that the First Amendment forbids an official purpose to disapprove of a particular religion or of religion in general." (citations omitted)); *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1396 (9th Cir. 1994) ("The government neutrality required under the Establishment Clause is thus violated as much by government disapproval of religion as it is by government approval of religion." (citations omitted)).[4]

---

[4] Plaintiff discusses at length the test established by *Lemon v. Kurtzman*, 403 U.S. 602 (1971). *See* Pl.'s MSJ, ECF 125 at 4–8. In light of *Kennedy v. Bremerton School District*, 597 U.S. 507 (2022), "[i]nstead of relying on the *Lemon* test, lower courts must now interpret the

PAGE 14 – OPINION AND ORDER GRANTING IN PART AND DENYING IN PART SUMMARY JUDGMENT

### 1.  May 2019 Ramadan List

Defendants are entitled to summary judgment on Plaintiff's Establishment Clause claim against Defendant Thompson for the alleged failure to add Plaintiff to the Ramadan list in May 2019. As explained in the preceding sections, Defendants have produced evidence showing that Defendant Thompson added Plaintiff's name to the Ramadan list. While this Court accepts that Plaintiff missed the first day of Ramadan, there is no genuine dispute of fact as to whether Defendant Thompson added his name to this list.

### 2.  Early Ending for October 18 Service and Suspension of Services

Defendants are entitled to summary judgment on Plaintiff's Establishment Clause claims relating to the early termination and suspension of the Jumma Prayer Services. The facts alleged by Plaintiff, even when construed in his favor, raise no plausible inference that Defendants Thompson or Stahlnecker officially condoned a particular religion or religious belief or acted out of hostility toward Plaintiff's religion.

## E.  Equal Protection

The Equal Protection Clause mandates that prison officials cannot discriminate against particular religions. *Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds by Shakur*, 514 F.3d at 884–85, *as stated in Penwell v. Holtgeerts*, 365 F. App'x 665, 667 (9th Cir. 2010). "[T]he Equal Protection Clause entitles each prisoner to a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts." *Shakur*, 514 F.3d at 891 (citation and internal

---

Establishment Clause by 'reference to historical practices and understandings.'" *Sabra v. Maricopa Cnty. Cmty. Coll. Dist.*, 44 F.4th 867, 888 (9th Cir. 2022) (quoting *Kennedy*, 597 U.S. at 535). Because this Court concludes that Plaintiff has alleged no facts and provided no evidence giving rise to an inference of hostility toward his religion, it is unnecessary to determine what test is appropriate.

quotation marks omitted). "To succeed on an equal protection claim, a plaintiff in a [§] 1983 claim must show that officials intentionally acted in a discriminatory manner." *Freeman*, 125 F.3d at 737 (first citing *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991); and then citing *Sischo–Nownejad v. Merced Cmty. Coll. Dist.*, 934 F.2d 1104, 1112 (9th Cir. 1991)), *superseded on other grounds as stated in Dominguez-Curry v. Nev. Transp. Dep't*, 424 F.3d 1027, 1041–42 (9th Cir. 2005) . A plaintiff may show discriminatory intent by offering evidence of disparate treatment sufficient to raise an inference of discriminatory purpose. *Freeman*, 125 F.3d at 737– 39.

### 1. May 2019 Ramadan List

Defendants are entitled to summary judgment on Plaintiff's equal protection claim against Defendant Thompson for the Ramadan list. Construing the facts and drawing inferences in Plaintiff's favor, Plaintiff has not presented evidence to create a triable issue of fact as to whether Defendant Thompson intentionally acted in a discriminatory manner. The exhibits provided by Defendants show that Defendant Thompson realized that several NOI members, including Plaintiff, had not been added to the Ramadan list. Ahead of Ramadan, Defendant Thompson added them to the list.

### 2. Early Ending for October 18 Service and Suspension of Services

Defendants are entitled to summary judgment on Plaintiff's equal protection claim for the early ending of the Jumma Prayer Service and the 90-day suspension of Services. The facts alleged by Plaintiff reflect no intent on the part of Defendants to discriminate against Plaintiff or treat him differently because of his religion. Rather, Plaintiff alleges that Defendants Thompson and Stahlnecker were motivated by retaliation. Indeed, Plaintiff has produced no evidence that

would give rise to a reasonable inference that the Defendants intended to discriminate against him on account of his religion.

## F. RLUIPA

RLUIPA provides broader protections for religious exercise than does the First Amendment. *See Greene v. Solano Cnty. Jail*, 513 F.3d 982, 986 (9th Cir. 2008). RLUIPA provides that "[n]o [state or local] government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution" unless the government shows the burden furthers "a compelling governmental interest" and is the "least restrictive means" of furthering that interest. 42 U.S.C. § 2000cc-1(a); *see also Cutter v. Wilkinson*, 544 U.S. 709, 715 (2005). RLUIPA defines "religious exercise" as "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000cc-5(7)(A); *see also Cutter*, 544 U.S. at 715.

Defendants are entitled to summary judgment on Plaintiff's RLUIPA claims because, even assuming Plaintiff could show violations of RLUIPA, he is not entitled to the relief he seeks for several reasons.

First, RLUIPA does not contemplate liability of government employees in their individual capacity. *See Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014). According to the Amended Complaint, Plaintiff's RLUIPA claims are made against the Defendants in their individual capacities. Second, any claims for monetary damages against Defendants, who are state employees, in their official capacities are barred by sovereign immunity. *See Sossamon v. Texas*, 563 U.S. 277, 285–86 (2011); *see also Alvarez v. Hill*, 667 F.3d 1061, 1063 (9th Cir. 2012). Likewise, "RLUIPA does not authorize suits for damages against state officials in their individual capacities because individual state officials are not recipients of federal funding and

nothing in the statute suggests any congressional intent to hold them individually liable." *Jones v. Williams*, 791 F.3d 1023, 1031 (9th Cir. 2015) (citing *Wood*, 753 F.3d at 903–04). Because Plaintiff is not entitled to money damages for the alleged RLUIPA violations, whether brought against Defendants in their official or individual capacities, he can prove no set of facts that would entitle him to relief. Third, along with barring claims for monetary damages, the Eleventh Amendment also bars retrospective declaratory relief against the state. *Lund v. Cowan*, 5 F.4th 964, 969 (9th Cir. 2021). Last, as discussed above, Plaintiff does not have standing to pursue his claims for injunctive relief.

For all these reasons, Defendants are entitled to summary judgment on Plaintiff's RLUIPA claims.

## G.  Access to Courts

To establish a violation of the right of access to the courts, Plaintiff must establish that he has suffered an actual injury. *Lewis v. Casey*, 518 U.S. 343, 349 (1996). Actual injury is a jurisdictional requirement that flows from the doctrine of standing and may not be waived. *Id.* Plaintiff must show "actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (quoting *Lewis*, 518 U.S. at 348).

Plaintiff has not presented evidence to create a triable issue of fact as to whether he suffered any prejudice from Defendant Schow's confiscation of his legal materials. He states that the confiscation interfered with his criminal and civil cases, but he offers no specific details nor any evidence to show actual prejudice. Defendants are entitled to summary judgment on this claim.

**H.  State-Law Claim**

Last, Plaintiff cannot pursue a state-law claim for conversion in this Court against Defendant Schow. The sole cause of action under Oregon law for any tort committed by ODOC officers or employees acting within the scope of their employment or duties, as alleged here, is an action against ODOC under the Oregon Tort Claims Act. O.R.S. 30.265(1)–(2). However, ODOC is an arm of the State and is immune from suit in federal court for supplemental state-law claims. *See Eaton v. Two Rivers Correction Inst. Grievance Coordinator Enyon*, Case No. 2:20-cv-1251-SI, 2020 WL 7364975, at *6 (D. Or. Dec. 15, 2020); *Est. of Pond v. Oregon*, 322 F. Supp. 2d 1161, 1165 (D. Or. 2004). Accordingly, Defendants are entitled to summary judgment on Plaintiff's state-law claim.

## CONCLUSION

Defendants' Motion for Summary Judgment, ECF 99, is GRANTED in part and DENIED in part. Defendants are entitled to summary judgment on all claims except those relating to the 90-day suspension of the Jumma Prayer Services. For those claims, Plaintiff may only seek damages. Defendant Schow is DISMISSED from this action. Plaintiff's Motion for Summary Judgment, ECF 125, is DENIED.

**IT IS SO ORDERED.**

DATED this 31st day of March, 2024.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge